[No. A123725. First Dist., Div. Three. Jan. 29, 2010.]

ELENA LHOTKA, Individually and as Executor, etc., et al., Plaintiffs and Respondents, v.
GEOGRAPHIC EXPEDITIONS, INC., Defendant and Appellant.

818

COUNSEL

Rubin, Hay & Gould, Rodney E. Gould; Walsworth, Franklin, Bevins & McCall, Laurie E. Sherwood and Alex F. Pevzner for Defendant and Appellant.

Law Offices of David J. Bennion, David J. Bennion; Law Office of Daniel U. Smith and Daniel U. Smith for Plaintiffs and Respondents.

## OPINION

**SIGGINS, J.**—Geographic Expeditions, Inc. (GeoEx), appeals from an order denying its motion to compel arbitration of a wrongful death action brought by the survivors of one of its clients who died on a Mount Kilimanjaro hiking expedition. GeoEx contends the trial court erred when it ruled that the agreement to arbitrate contained in GeoEx's release form was unconscionable. Alternatively, GeoEx contends that if the court correctly concluded the arbitration clause was unconscionable, the court abused its discretion in striking the clause in its entirety rather than severing the objectionable provisions and enforcing the remainder. We find neither point is persuasive, and therefore affirm the order.

## BACKGROUND

Jason Lhotka was 37 years old when he died of an altitude-related illness while on a GeoEx expedition up Mount Kilimanjaro with his mother, plaintiff Sandra Menefee.[1] GeoEx's limitation of liability and release form, which both Lhotka and Menefee signed as a requirement of participating in the expedition, provided that each of them released GeoEx from all liability in connection with the trek and waived any claims for liability "to the maximum extent permitted by law." The release also required that the parties would submit any disputes between themselves first to mediation and then to binding arbitration. It reads: "I understand that all Trip Applications are subject to acceptance by GeoEx in San Francisco, California, USA. I agree that in the unlikely event a dispute of any kind arises between me and GeoEx, the following conditions will apply: (a) the dispute will be submitted to a neutral third-party mediator in San Francisco, California, with both parties splitting equally the cost of such mediator. If the dispute cannot be resolved through mediation, then (b) the dispute will be submitted for binding arbitration to the American Arbitration Association in San Francisco, California; (c) the dispute will be governed by California law; and (d) the maximum amount of recovery to which I will be entitled under any and all circumstances will be the sum of the land and air cost of my trip with GeoEx. I agree that this is a fair and reasonable limitation on the damages, of any sort whatsoever, that I may suffer. [¶] I agree to fully indemnify GeoEx for all of its costs (including attorneys' fees) if I commence an action or claim against GeoEx based upon claims I have previously released or waived by signing this release." Menefee paid $16,831 for herself and Lhotka to go on the trip.

A letter from GeoEx president James Sano that accompanied the limitation of liability and release explained that the form was mandatory and that, on

---

[1] The other plaintiffs and respondents are Elena Lhotka, individually and as executor of the estate, and Nicholas Lhotka by his guardian ad litem (also Elena Lhotka).

this point, "our lawyers, insurance carriers and medical consultants give us no discretion. A signed, unmodified release form is required before any traveler may join one of our trips. [¶] Ultimately, we believe that you should choose your travel company based on its track record, not what you are asked to sign. . . . My review of other travel companies' release forms suggests that our forms are not a whole lot different from theirs."

After her son's death, Menefee sued GeoEx for wrongful death and alleged various theories of liability including fraud, gross negligence and reckless-ness, and intentional infliction of emotional distress. GeoEx moved to compel arbitration.

The trial court found the arbitration provision was unconscionable under *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), and on that basis denied the motion. It ruled: "The agreement at issue is both procedurally and substantively unconscionable. . . . The Sano letter establishes that the agreement was presented as a Take It Or Leave It proposition and was also represented to be consistent with industry practice. As a consequence[,] if the plaintiff and decedent wished to go on this trip, they could do so only on these terms. Unconscionability also permeates the substantive terms of the agreement to arbitrate. The problematic terms are the limitation on damages, the indemnity of GeoEx, the requirement that GeoEx costs and attorneys' fees be paid if suit is filed related to certain claims, splitting the costs of mediation, the absence of an agreement on the cost of arbitration and the lack of mutuality as to each of these terms. As a consequence, this is not a case where the court may strike a single clause and compel arbitration."

This appeal timely followed.

## DISCUSSION

The questions posed here are (1) whether the agreement to arbitrate is unconscionable and, therefore, unenforceable; and (2) if so, whether the court properly declined to enforce the entire arbitration clause rather than sever unconscionable provisions. We answer both questions in the affirmative.

### I. *Standard of Review*

On appeal from the denial of a motion to compel arbitration, "[u]nconscio-nability findings are reviewed de novo if they are based on declarations that raise 'no meaningful factual disputes.' [Citation.] However, where an uncon-scionability determination 'is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn

therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence.' [Citation.] The ruling on severance is reviewed for abuse of discretion." (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 [67 Cal.Rptr.3d 120]; see *Armendariz, supra,* 24 Cal.4th at p. 122.) In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 686 [99 Cal.Rptr.2d 809]; see *Armendariz, supra,* at p. 97.)

## II. *Unconscionability*

We turn first to GeoEx's contention that the court erred when it found the arbitration agreement unconscionable. Although the issue arises here in a relatively novel setting, the basic legal framework is well established. " '[U]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' [Citation.] Phrased another way, unconscionability has both a 'procedural' and a 'substantive' element." (*A & M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 486 [186 Cal.Rptr. 114].) " 'The procedural element requires oppression or surprise. [Citation.] Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form. [Citation.] The substantive element concerns whether a contractual provision reallocates risks in an objectively unreasonable or unexpected manner.' [Citation.] Under this approach, both the procedural and substantive elements must be met before a contract or term will be deemed unconscionable. Both, however, need not be present to the same degree. A sliding scale is applied so that 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1317 [27 Cal.Rptr.3d 797], quoting *Armendariz, supra,* 24 Cal.4th at p. 114; see *A & M Produce Co., supra,* at p. 486.) This notion of a "sliding scale," as will be seen, figures centrally in the analysis of the agreement at issue here.

### A.  Procedural Unconscionability

GeoEx argues the arbitration agreement involved neither the oppression nor surprise aspects of procedural unconscionability. GeoEx argues the agreement was not oppressive because plaintiffs made no showing of an "industry-wide requirement that travel clients must accept an agreement's

terms without modification" and "they fail[ed] even to attempt to negotiate" with GeoEx. We disagree. GeoEx's argument cannot reasonably be squared with its own statements advising participants that they must sign an *unmodified* release form to participate in the expedition; that GeoEx's "lawyers, insurance carriers and medical consultants give [it] no discretion" on that point; and *that other travel companies were no different.*[2] In other words, GeoEx led plaintiffs to understand not only that its terms and conditions were nonnegotiable, but that plaintiffs would encounter the same requirements with any other travel company. This is a sufficient basis for us to conclude plaintiffs lacked bargaining power.

GeoEx also contends its terms were not oppressive, apparently as a matter of law, because Menefee and Lhotka could have simply decided not to trek up Mount Kilimanjaro. It argues that contracts for recreational activities can *never* be unconscionably oppressive because, unlike agreements for necessities such as medical care or employment, a consumer of recreational activities *always* has the option of foregoing the activity. The argument has some initial resonance, but on closer inspection we reject it as unsound.

■ While the nonessential nature of recreational activities is a factor to be taken into account in assessing whether a contract is oppressive, it is not necessarily the dispositive factor. *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094 [118 Cal.Rptr.2d 862] is informative. The defendant, a credit card company, argued the plaintiff could not establish procedural unconscionability because there were "market alternatives" to its product— i.e., the plaintiff had the option of taking his business to a different bank. The court disagreed, and held the customer's ability to walk away rather than sign the offending contract was not dispositive. "The availability of similar goods or services elsewhere may be relevant to whether the contract is one of adhesion, but even if the clause at issue here is not an adhesion contract, it can still be found unconscionable. Moreover, 'in a given case, a contract might be adhesive even if the weaker party could reject the terms and go elsewhere. [Citation.]' [Citation.] Therefore, whether Szetela could have found another credit card issuer who would not have required his acceptance of a similar clause *is not the deciding factor.*" (*Id.* at p. 1100, italics added; see also *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1408–1409 [7 Cal.Rptr.3d 418].) The focus of procedural unconscionability in *Szetela*, rather, was on the manner in which the disputed clause was presented. Faced with the options of either closing his account or accepting the credit card company's "take it or leave it" terms, Szetela established the necessary

---

[2] This is the clear import of Sano's letter and, in any event, it is also the trial court's interpretation, which we accept because it is supported by substantial evidence. (*Murphy v. Check 'N Go of California, Inc., supra,* 156 Cal.App.4th at p. 144.)

element of procedural unconscionability despite the fact that he could have simply taken his business elsewhere. (*Szetela, supra,* at p. 1100.)

The cases on which GeoEx relies do not hold otherwise. GeoEx relies on *Morris v. Redwood Empire Bancorp, supra,* 128 Cal.App.4th at page 1320, for its statement that the " 'procedural element of unconscionability may be defeated[] if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable.' " "[M]ay be defeated," true—but not "must," in all cases and as a matter of law. *Morris* takes its premise from *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 772 [259 Cal.Rptr. 789], in which Division Two of this court expressly declined to hold or suggest "that *any* showing of competition in the marketplace as to the desired goods and services defeats, as a matter of law, *any* claim of unconscionability." Indeed, *Morris* itself recognizes that some contracts may be oppressive despite the availability of market alternatives, albeit in the context of employment or medical care—i.e., contracts for " 'life's necessities.' " (*Morris, supra,* at p. 1320, quoting *West v. Henderson* (1991) 227 Cal.App.3d 1578, 1587 [278 Cal.Rptr. 570]; see *Armendariz, supra,* 24 Cal.4th at p. 115 [employment].)

Many of the other authorities cited by GeoEx are inapposite because they concern challenges to release of liability clauses under the rule that invalidates exculpatory provisions that affect the public interest. (See *Tunkl v. Regents of University of California* (1963) 60 Cal.2d 92, 96–97 & fn. 6 [32 Cal.Rptr. 33, 383 P.2d 441]; Civ. Code, § 1668.) In this specific context, our courts consistently hold that recreation does not implicate the public interest, and therefore approve exculpatory provisions required for participation in recreational activities. (See, e.g., *Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 161–162 [21 Cal.Rptr.2d 245] [swim class]; *Saenz v. Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758, 764 [276 Cal.Rptr. 672] [river rafting]; *Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 597–599 [250 Cal.Rptr. 299] [scuba diving]; *Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 756 [29 Cal.Rptr.2d 177] [skydiving]; *Buchan v. United States Cycling Federation, Inc.* (1991) 227 Cal.App.3d 134 [277 Cal.Rptr. 887] [cycle racing]; *Coates v. Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1, 8 [236 Cal.Rptr. 181] [riding dirtbike]; *Kurashige v. Indian Dunes, Inc.* (1988) 200 Cal.App.3d 606, 611–612 [246 Cal.Rptr. 310] [motorcycle dirtbike].) But these cases do not focus on unconscionability, and they do not hold that contracts for recreational activities are immune from analysis for procedural unconscionability.

■ Here, certainly, plaintiffs could have chosen not to sign on with the expedition. That option, like any availability of market alternatives, is

relevant to the existence, and degree, of oppression. (See *Szetela v. Discover Bank, supra*, 97 Cal.App.4th at p. 1100; *Laster v. T-Mobile USA, Inc.* (S.D.Cal. 2005) 407 F.Supp.2d 1181, 1188 & fn. 1; see also *Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1376 [59 Cal.Rptr.2d 813] [nonessential, recreational nature of skiing was one of several factors that indicated a release clause was not substantively unconscionable]; but see *Belton v. Comcast Cable Holdings, LLC* (2007) 151 Cal.App.4th 1224, 1246 [60 Cal.Rptr.3d 631] [dictum that availability of other cable providers defeated claim of unconscionability].) But we must also consider the other circumstances surrounding the execution of the agreement. GeoEx presented its limitation of liability and release form as mandatory and unmodifiable, and essentially told plaintiffs that any other travel provider would impose the same terms. "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . . . ." (*Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1165 [22 Cal.Rptr.3d 189] [finding no oppression where evidence showed no circumstances surrounding the execution of the agreement, so no showing of unequal bargaining power, lack of negotiation, or lack of meaningful choice].) Here, in contrast to *Crippen*, GeoEx presented its terms as both nonnegotiable and *no different than what plaintiffs would find with any other provider*. Under these circumstances, plaintiffs made a sufficient showing to establish at least a minimal level of oppression to justify a finding of procedural unconscionability. (See *Morris v. Redwood Empire Bancorp, supra*, 128 Cal.App.4th at p. 1319 ["our task is not only to determine *whether* procedural unconscionability exists, but more importantly, *to what degree* it may exist"].)

### B.  Substantive Unconscionability

With the "sliding scale" rule firmly in mind (*Armendariz, supra*, 24 Cal.4th at p. 114), we address whether the substantive unconscionability of the GeoEx contract warrants the trial court's ruling. *Harper v. Ultimo, supra*, 113 Cal.App.4th 1402, is analogous. The Harpers hired a contractor to perform work on their property. The contractor allegedly broke a sewer pipe, causing concrete to infiltrate the plaintiffs' soil, plumbing and sewer and wreak havoc on their backyard drainage system. Unfortunately for the Harpers, the arbitration provision in the construction contract limited the remedies against their contractor to a refund, completion of work, costs of repair or any out-of-pocket loss or property damage—and then capped any compensation at $2,500 unless the parties agreed otherwise in writing.

In the words of Justice Sills, substantive unconscionability was "so present that it is almost impossible to keep from tripping" over it. (*Harper v. Ultimo, supra*, 113 Cal.App.4th at p. 1406.) "Substantive unconscionability focuses on the one-sidedness or overly harsh effect of the contract term or

clause. [Citation.] In the present case, the operative effect of the arbitration is even more one-sided against the customer than the clauses in any number of cases where the courts have found substantive unconscionability. (E.g., *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064 [130 Cal.Rptr.2d 892, 63 P.3d 979] [either party could appeal any award of more than $50,000 to second arbitrator]; *Szetela v. Discover Bank*[, *supra*,] 97 Cal.App.4th 1094 . . . [arbitration clause absolutely barred class actions]; *Saika v. Gold* (1996) 49 Cal.App.4th 1074 [56 Cal.Rptr.2d 922] [arbitration award could be rejected if it exceeded $25,000].) As in *Little*, *Szetela* and *Saika*, the limitation of damages provision here is yet another version of a 'heads I win, tails you lose' arbitration clause that has met with uniform judicial opprobrium." The arbitration provision in the Harpers' contract did not allow even a theoretical possibility that they could be made whole, because there was no possibility of obtaining meaningful compensation unless the contractor agreed—which, not surprisingly, it did not. (*Harper v. Ultimo, supra*, at p. 1407.)

The arbitration provision in GeoEx's release is similarly one-sided as that considered in *Harper*. It guaranteed that plaintiffs could not possibly obtain anything approaching full recompense for their harm by limiting any recovery they could obtain to the amount they paid GeoEx for their trip. In addition to a limit on their recovery, plaintiffs, residents of Colorado, were required to mediate and arbitrate in San Francisco—all but guaranteeing both that GeoEx would never be out more than the amount plaintiffs had paid for their trip, and that any recovery plaintiffs might obtain would be devoured by the expense they incur in pursing their remedy.[3] The release also required plaintiffs to indemnify GeoEx for its costs and attorney fees for defending any claims covered by the release of liability form.[4] Notably, there is no reciprocal limitation on damages or indemnification obligations imposed on GeoEx. Rather than providing a neutral forum for dispute resolution, GeoEx's arbitration scheme provides a potent disincentive for an aggrieved client to pursue any claim, in any forum—and may well guarantee that GeoEx wins even if it loses. Absent reasonable justification for this arrangement—and none is apparent—we agree with the trial court that the arbitration clause is so one-sided as to be substantively unconscionable. (See *Armendariz, supra*,

---

[3] The requirement that the parties share the cost of mediation does not factor into our analysis that the agreement is substantively unconscionable. Whether such cost sharing is appropriate depends on a number of issues that we need not consider. (See *D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 860–864 [98 Cal.Rptr.3d 300].)

[4] GeoEx is wrong when it claims the trial court erred "in even considering clauses outside the arbitration provision," such as the limitation of liability and indemnification provisions, "etc." It is unclear which "etc." provisions GeoEx contends are "outside" the arbitration clause, but the limitation of liability clause GeoEx specifically identifies appears as subdivision (d) of the paragraph that requires arbitration, while the indemnification provision that immediately follows it is substantively relevant to whether or not the proposed arbitration system would provide an unacceptably one-sided forum for dispute resolution.

24 Cal.4th at p. 121 [damages remedy unilaterally limited]; *Pinedo v. Premium Tobacco Stores, Inc.* (2000) 85 Cal.App.4th 774, 781 [102 Cal.Rptr.2d 435] [damages remedy limited, plaintiff required to pay all costs, and required hearing location was in Oakland].)

### III.  *Severability*

GeoEx argues that, even if the limitation of liability provision was unconscionable, the court abused its discretion when it refused to strike it and enforce the remainder of the arbitration clause. We disagree.

■ Civil Code section 1670.5, subdivision (a) gives the trial court discretion to either refuse to enforce a contract it finds to be unconscionable, or to strike the unconscionable provision and enforce the remainder of the contract. It provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." The trial court has discretion under this statute to refuse to enforce an entire agreement if the agreement is "permeated" by unconscionability. (*Armendariz, supra*, 24 Cal.4th at p. 122; *Murphy v. Check 'N Go of California, Inc., supra*, 156 Cal.App.4th at p. 149.) An arbitration agreement can be considered permeated by unconscionability if it "contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage." (*Armendariz, supra*, at p. 124; see *Murphy, supra*, at p. 148.) "The overarching inquiry is whether ' "the interests of justice . . . would be furthered" ' by severance." (*Armendariz, supra*, at p. 124.)

■ Here, the trial court identified multiple elements of the agreement that indicate GeoEx designed its arbitration clause to impose arbitration "not simply as an alternative to litigation, but as an inferior forum" that would give it an advantage. In addition to limiting plaintiffs' recovery, the agreement required them to indemnify GeoEx for its legal costs and fees if they pursued any claims covered by the release agreement. These one-sided burdens were compounded by the requirements that plaintiffs pay half of any mediation fees and mediate and arbitrate in San Francisco, GeoEx's choice of venue, far from plaintiffs. It was within the court's discretion to conclude this agreement was so permeated by unconscionability that the interests of justice would not be furthered by severing the damages limitation clause and enforcing the remainder. (*Armendariz, supra*, 24 Cal.4th at p. 124.)

## DISPOSITION

The order denying GeoEx's motion to compel arbitration is affirmed.

McGuiness, P. J., and Pollak, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 14, 2010, S180886. George, C. J., did not participate therein.