**Y.G.; et al.**

**v.**

**RIVERSIDE UNIFIED SCHOOL DISTRICT; et al.**

**No. EDCV 10–1002 CAS (OPx).**

United States District Court,
C.D. California.

Feb. 28, 2011.

---

Heather McGunigle, for Plaintiffs.

Jack Clarke, for Defendants.

Proceedings: **DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** (filed 12/13/10)

CHRISTINA A. SNYDER, District Judge.

## I. INTRODUCTION

On July 8, 2010, Y.G., a minor, by and through her mother and guardian ad litem, Mojdeh Ghadiri–Asli, and Mojdeh Ghadiri–Asli (collectively, "plaintiffs") filed the instant action against Riverside Unified School District, a public entity, and River-side Special Education Local Plan Area (collectively, "defendants"). On October 6, 2010, plaintiffs filed a first amended complaint ("FAC") against defendants alleging claims for violations of: (1) Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.;* (2) California Education Code § 56000 *et seq.;* (3) contract law/ California Civil Code §§ 1668 and 3513; (4) Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.;* (5) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.;* (6) California Government Code § 11135; (7) Unruh Civil Rights Act, Cal. Civ.Code § 51 *et seq.;* and (8) California Civil Code §§ 54 and 54.1.

On December 13, 2010, defendants filed a motion to dismiss the FAC. On January 24, 2011, plaintiffs filed an opposition to defendants' motion. Defendants replied on January 31, 2011. After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II. BACKGROUND

Y.G. is a thirteen-year-old student who has severe language and social behavior impairments. FAC ¶¶ 15, 21. She also has a visual perceptual deficit and has been diagnosed as being on the autism spectrum. FAC ¶¶ 15, 21. Y.G. is eligible for special education and related services under the IDEA and the California Education Code. FAC ¶ 15; *see* 20 U.S.C. § 1400 *et seq.;* Cal. Educ.Code § 56000 *et seq.* Mojdeh Ghadiri–Asli is Y.G.'s mother and holder of Y.G.'s educational rights. FAC ¶ 16.

Y.G. was first found eligible for special education at the age of three. FAC ¶ 21. When she was in first grade, in New York State, she began attending a special school, due to severe language, academic, and behavior problems. FAC ¶ 21. Y.G.

entered the Riverside Unified School District ("RUSD") in 2003, and was placed at Big Springs School ("Big Springs"), a nonpublic school, pursuant to an Individualized Education Program ("IEP"). FAC ¶ 22; *see* 34 C.F.R. § 300.320 (defining an IEP). In December 2008, Y.G.'s IEP Team decided to transition Y.G. into RUSD's elementary school program. FAC ¶ 23. Initially, Y.G. attended half days at Big Springs and half days at RUSD's Taft Elementary School ("Taft Elementary"). FAC ¶ 23. Plaintiffs allege that Y.G.'s communication and social behavior regressed when the transition to Taft was initiated. FAC ¶ 23. Nevertheless, in March 2009, Y.G. was enrolled in Taft Elementary full time. FAC ¶ 24.

In May and June 2009, Y.G.'s IEP Team convened at the conclusion of her sixth grade year. FAC ¶ 25. Believing that her daughter was not academically, communicatively, or socially prepared to enter middle school, Y.G.'s mother requested that Y.G. be retained in sixth grade at Taft Elementary. FAC ¶ 26. RUSD officials disagreed and recommended that Y.G. be promoted to seventh grade at Earhardt Middle School. FAC ¶ 26. Y.G.'s mother partially consented to the IEP, but documented her disagreement with the decisions to promote Y.G. to middle school, reduce the amount of speech therapy offered, and deny vision therapy. FAC ¶ 26. Plaintiffs allege that despite Y.G.'s mother's disagreement with aspects of the June 2009 IEP, defendants did not provide her a "prior written notice" upon which she could base a request for an impartial due process hearing. FAC ¶ 27; *see* 20 U.S.C. § 1415(b)(3).

Sometime thereafter, Y.G.'s mother received a report from Taft Elementary for the 2008–2009 school year, which identified Y.G. as having been in the fifth grade for that school year. FAC ¶ 29. Y.G.'s mother understood this to mean that RUSD had conceded to her wish that Y.G. remain in sixth grade for the following school year. FAC ¶ 29. In addition, a RUSD official telephoned Y.G.'s mother and told her that, even though Y.G. was not going to be promoted to Earhardt Middle School, Y.G. would be upset if she did not participate in a graduation ceremony with her classmates. FAC ¶ 29. Y.G.'s mother allowed Y.G. to participate in the graduation. FAC ¶ 29.

On August 24, 2009, the first day of the 2009–2010 school year, Y.G.'s mother took Y.G. to Taft Elementary. FAC ¶ 30. Y.G.'s mother was informed by the school Principal, however, that Y.G. was not registered there because she had been promoted to the seventh grade. FAC ¶ 30. Y.G.'s mother asked to speak with RUSD school officials, and was directed to the RUSD District Office. FAC ¶ 30. When Y.G.'s mother arrived at the District Office, she met with three RUSD officials.[1] FAC ¶ 31. The RUSD officials presented Y.G.'s mother with a pre-drafted document titled "confidential settlement agreement" (the "Agreement"), that, if signed, would allow Y.G. to remain in sixth grade at Taft Elementary for the 2009–2010 school year.[2] FAC ¶ 32. Plaintiffs allege that the terms of the Agreement purported to resolve any and all issues, known or unknown, through June 4, 2010, and contained an acknowledgment that Y.G.'s June 2009 IEP constituted a free and appropriate public education ("FAPE").

---

**1.** Plaintiffs allege that Y.G.'s mother met with Tim Walker, RUSD Executive Director of Pupil Services and Riverside Special Education Local Area Plan ("SELPA"), Margi Jacobson, Assistant SELPA Director, and Alicia Grissom, RUSD Program Specialist. FAC ¶ 31.

**2.** The Agreement is not attached to the FAC or otherwise before the Court.

FAC ¶ 32. Additionally, the Agreement stated that IEP meetings would only be convened for the purpose of reviewing goals and objectives. FAC ¶ 32.

Plaintiffs allege that the RUSD school officials handed Y.G.'s mother the Agreement, told her to read it, and told her that if she signed it, Y.G. would be permitted to go to school that day and she could go to work. FAC ¶ 32. The school officials also told Y.G.'s mother that she was entitled to have a lawyer review the Agreement, but that the offer would be revoked at 5:00 p.m. FAC ¶ 32. The school officials told Y.G.'s mother not to discuss the contents of the Agreement with anyone. FAC ¶ 32. Plaintiffs allege that defendants did not provide Y.G.'s mother with a copy of her procedural safeguards under the IDEA or explain the terms of the Agreement to her. FAC ¶ 36. Y.G.'s mother did not have a lawyer at the meeting, nor was any impartial, disinterested party knowledgeable in special education laws and regulations present at the meeting. FAC ¶¶ 32, 34. Plaintiffs allege that Y.G.'s mother understood the Agreement to be an informal agreement about Y.G.'s placement in the sixth grade and did not understand that she would be precluded from requesting any changes to Y.G.'s educational program or exercising her due process rights, and all other rights or claims vis a vis defendants for a full school year prospectively. FAC ¶ 38. Plaintiffs further allege that Y.G.'s mother did not understand that she was waiving all special education claims against RUSD, known or unknown, including compensatory services for Y.G., through June 4, 2010. FAC ¶ 38. Because she was afraid that her daughter would be denied a necessary placement, Y.G.'s mother signed the Agreement. FAC ¶ 32.

Thereafter, Y.G.'s mother sent repeated requests to defendants requesting in-creased services for Y.G. and the convening of Y.G.'s IEP Team. FAC ¶¶ 39, 40, 43, 45, 46. Defendants responded by informing her that, pursuant to the terms of the Agreement, the IEP Team could be convened, but would not discuss any changes to Y.G.'s services. FAC ¶¶ 41, 42. When Y.G.'s IEP Team convened, it did not discuss or adjust any of Y.G.'s services. FAC ¶¶ 43, 45, 46. On October 7, 2009, Y.G.'s mother sent a letter to defendants attempting to revoke her consent to the June 2009 IEP, the Agreement, and requesting an IEP meeting. FAC ¶ 40. On March 15, 2010, Y.G.'s mother filed a due process hearing request with the Office of Administrative Hearings ("OAH"). FAC ¶ 47. On April 8, 2010, the OAH dismissed the request for lack of jurisdiction. FAC ¶ 47. This action ensued.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, only a complaint that states a claim for relief that is "plausible on its face" survives a motion to dismiss. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "The plausibility standard is not akin to the 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In considering a motion pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). The complaint must be read in the light most favorable to the nonmoving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Sprewell*, 266 F.3d at 988; *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pac. Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (*e.g.*, facts presented in briefs, affidavits, or discovery materials). *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir.1996), *rev'd on other grounds sub. nom. Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6). *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir.1981).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed.R.Civ.P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000).

## IV. DISCUSSION

### A. Claims 1 and 2: Violation of the Individuals with Disabilities Education Act and California Education Code

■ Plaintiffs allege that the Agreement deprived plaintiffs of various substantive and procedural rights guaranteed by the IDEA and the California Education Code. FAC ¶¶ 61, 63, 64, 69, 71, 74, 75, 78. Plaintiffs further allege that the contract violates the IDEA because the waiver was not given voluntarily and knowingly. FAC ¶ 60.

Defendants argue that plaintiffs' first claim under the IDEA is a state law contract claim disguised as a claim based upon the IDEA. Mot. at 6, 8–9. Defendants contend that the thrust of plaintiffs' IDEA claim is that the Agreement Y.G.'s mother signed is void and unenforceable because it includes a waiver of certain rights provided by the IDEA, and accordingly, the Court should decline to exercise jurisdiction over it. *Id.* at 3, 6–9. Defendants further argue that plaintiffs fail to state an IDEA claim because plaintiffs have not exhausted their administrative remedies as required by 20 U.S.C. § 1415(*l*). *Id.* at 7–8, 10 (citing *Robb v. Bethel Sch. Dist. No. 403*, 308 F.3d 1047, 1050 (9th Cir.2002);

*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992); *Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 810 (10th Cir.1989)). Defendants advance similar arguments with respect to plaintiffs' second claim under the California Education Code. *See id.* at 8–11.

In opposition, plaintiffs argue that the FAC alleges both procedural and substantive violations of the IDEA. Opp'n at 8–9 (citing FAC ¶¶ 8, 9, 10, 26, 39, 43, 61). Plaintiffs maintain that defendants denied Y.G. a FAPE by relying on the Agreement in refusing to consider Y.G.'s mother's concerns for enhancing Y.G.'s education in the IEP process, and preventing her from filing a complaint during the pendency of the Agreement. *Id.* at 9 (citing *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 533, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007) (holding that parents have independent enforceable rights under the IDEA, including the entitlement to a FAPE for the parent's child)). Furthermore, relying upon *Somoza v. N.Y. City Dep't of Educ.*, 475 F.Supp.2d 373, 387–88 (S.D.N.Y.2007) ("*Somoza I*"), *rev'd on other grounds*, 538 F.3d 106 (2d Cir.2008), plaintiffs argue that their IDEA and contract claims are inextricably intertwined, and subject to a heightened level of scrutiny under the IDEA. *Id.* at 10–11. Plaintiffs further assert that they have exhausted their administrative remedies by filing a request for a due process hearing before the OAH, which was allegedly dismissed for lack of jurisdiction based upon the existence of the Agreement. *Id.* at 11 (citing FAC ¶ 47).[3] Plaintiffs contend that exhausting their administrative remedies a second time would be futile. *Id.* at 12–13 (citing *Hoeft*, 967 F.2d at 1303 ("Courts universal-ly recognize that parents need not exhaust the procedures set forth in 20 U.S.C. § 1415 where resort to the administrative process would be either futile or inadequate.")).

Defendants reply that plaintiffs' reliance on *Somoza I* is misplaced because the Second Circuit overturned the district court's ruling on the grounds that plaintiff's claims were time barred. Reply at 2–3 (citing *Somoza v. N.Y. City Dep't of Educ.*, 538 F.3d 106, 115–16 (2d Cir.2008) ("*Somoza II*")). Defendants further contend that *Somoza I* is unlike this case because in that case, an administrative tribunal ruled on the merits of plaintiff's claim, whereas here the OAH made no factual determinations with respect to plaintiffs' complaint. *Id.* at 3–5.

█ The Court finds that plaintiffs' first claim for relief arises under federal law. Even if, as defendants argue, plaintiffs' claim is wholly premised upon the validity of the Agreement waiving plaintiffs' rights under the IDEA, "[t]he validity and interpretation of a release of significant federal rights is governed by federal law." *Salmeron v. United States*, 724 F.2d 1357, 1362 (9th Cir.1983). Accordingly, the Court has subject matter jurisdiction over plaintiffs' claim under the IDEA and supplemental jurisdiction over plaintiffs' remaining state law claims. 28 U.S.C. §§ 1331 and 1367(a). The parties do not cite, and the Court has not found any, Ninth Circuit authority addressing the circumstances under which IDEA claims may be waived, but the Court finds that this question is not appropriate for a motion to dismiss.[4] *Cf. Somoza I*, 475 F.Supp.2d at

---

3. The FAC does not allege an OAH case number, and the OAH decision is not before the Court.

4. The Court declines to decide at this stage the appropriate standard for determining the validity of a waiver of rights under the IDEA. The Court notes, however, that contrary to defendants' argument, the district court's

387–91 (concluding, after a three day bench trial, that stipulation purportedly releasing student's rights under the IDEA did not constitute a valid waiver). Finally, the Court finds that plaintiffs have exhausted their administrative remedies because the FAC alleges that plaintiffs filed a due process hearing with the OAH, which the OAH dismissed on April 8, 2010 for lack of jurisdiction. *See* FAC ¶ 47; *see also Christopher S. v. Stanislaus County Office of Educ.*, 384 F.3d 1205, 1210 (9th Cir.2004) ("Any parent who brings ... a complaint must have an opportunity for an impartial due process hearing conducted by the state or local educational agency. [20 U.S.C.] § 1415(f). If the hearing is held by a state agency, as is the case in California, *see* Cal. Educ.Code § 56501(b)(4), any party dissatisfied with the result may file a civil action. 20 U.S.C. § 1415(i)(2)(A)."). Accordingly, the Court DENIES defendants' motion to dismiss plaintiffs' first and second claims for relief under the IDEA and the California Education Code.

## B. Claim 3: California Contract Law

### 1. Unconscionability

Plaintiffs allege that the Agreement is unenforceable because it is both procedurally and substantively unconscionable. FAC ¶¶ 83 and 84. The doctrine of unconscionability "has generally been rec-

ognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. Phrased another way, unconscionability has both a procedural and a substantive element." *Lhotka v. Geographic Expeditions, Inc.*, 181 Cal.App.4th 816, 821, 104 Cal.Rptr.3d 844 (2010) (internal quotations and citation omitted). The procedural element focuses on the unequal bargaining positions of the parties and hidden terms, generally in the context of adhesion contracts. *Bolter v. Super. Ct.*, 87 Cal. App.4th 900, 907, 104 Cal.Rptr.2d 888 (2001). The substantive element traditionally involves "overly harsh" or "one-sided" results. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000) (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486–87, 186 Cal. Rptr. 114 (1982)). The prevailing view is that both elements must be present for the contract to be deemed unconscionable, but the elements need not be present in the same degree. *Id.* "A sliding scale is applied so that the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Lhotka*, 181 Cal.App.4th at 821, 104 Cal. Rptr.3d 844 (internal quotations omitted).

---

analysis in *Somoza I* with respect to the validity of the settlement agreement is still good law. In overruling *Somoza I*, the Second Circuit panel did not reach the question of whether the settlement agreement was valid. *See Somoza II*, 538 F.3d at 116 ("Because we have determined that plaintiff's claims under the IDEA were barred by the statute of limitations, we need not reach the question of whether the Agreement contained a valid waiver of any arguable claims of plaintiff."). Furthermore, the procedural history of *Somoza I* is not distinguishable from the present case. In *Somoza I*, as in this case, the admin-

istrative tribunal did not rule on the merits of plaintiff's claim, because it found that "the Stipulation [was] binding and bar[red] Somoza's claims." *Somoza I*, 475 F.Supp.2d at 382. After the district court concluded that plaintiff's waiver was invalid, the court remanded the case to the administrative tribunal for a hearing on whether the student was denied a FAPE. *See id.* at 391 ("Because neither the IHO and the SRO addressed the merits for the claims, the Court remands the case for a hearing on whether Somoza was denied a FAPE....").

Defendants argue that the Agreement is not procedurally unconscionable because it involved neither oppression nor surprise. Mot. at 15–17. First, defendants argue that Y.G.'s mother had several other options available to her at the time she signed the Agreement, and therefore cannot establish that she did not have a meaningful choice. *Id.* at 15. For example, defendants maintain that Y.G.'s mother could have invoked her procedural rights under the IDEA and the California Education Code, such as her right to request a mediation or a due process hearing. *Id.* at 15–16. Defendants further argue that the element of surprise is lacking because defendants advised Y.G.'s mother to read the Agreement, and informed her of her right to have a lawyer review it. *Id.* at 16 (citing FAC ¶ 32). Moreover, defendants contend that there is no allegation that RUSD overtly or covertly hid any terms of the Agreement from plaintiff. *Id.* at 17 (citing *Kinney v. United HealthCare Servs., Inc.,* 70 Cal.App.4th 1322, 1329, 83 Cal.Rptr.2d 348 (1999)). Finally, defendants argue that plaintiffs' allegation that she did not understand the language of the Agreement is insufficient to establish procedural unconscionability. *Id.* (citing *Madden v. Kaiser Found. Hosps.,* 17 Cal.3d 699, 710, 131 Cal.Rptr. 882, 552 P.2d 1178 (1976)).

Plaintiffs respond that defendants' argument wholly ignores the allegation that the Agreement is a contract of adhesion. Opp'n at 16–17, 17 n. 6 (citing FAC ¶ 83; *Higgins v. Super. Ct.,* 140 Cal.App.4th 1238, 1252, 45 Cal.Rptr.3d 293 (2006)). Plaintiffs further argue that the FAC alleges sufficient facts demonstrating that there was a lack of negotiation between the parties and Y.G.'s mother had no meaningful choice. *Id.* at 17. Moreover, plaintiffs contend that defendants had superior bargaining power, did not explain the Agreement or its effects on Y.G.'s rights, and it was unreasonable to expect Y.G.'s mother, a nonlegal professional, to understand the meaning or consequences of the terms. *Id.* at 17–18.

■ The Court concludes that the FAC sufficiently alleges the element of procedural unconscionability. Contrary to defendants' argument, whether Y.G.'s mother had other options available to her is one factor for the Court to consider, but it is not determinative.[5] *See Lhotka,* 181 Cal. App.4th at 821–23, 104 Cal.Rptr.3d 844, 849–50. Here, the FAC alleges that the Agreement was pre-drafted by defendants in a "take it or leave it" manner, and presented to Y.G.'s mother in such a way that she faced the choice of either signing the Agreement or having her daughter denied what she viewed to be a necessary placement. FAC ¶ 32. Moreover, although defendants advised Y.G.'s mother to read the terms of the Agreement and informed her that she was entitled to have a lawyer review it, defendants did not explain the terms and imposed a strict deadline under which Y.G.'s mother had to accept the offer. *See* FAC ¶ 32; *see also Parada v. Super. Ct.,* 176 Cal.App.4th 1554, 1571, 98 Cal.Rptr.3d 743 (2009) ("Where the contract is one of adhesion, conspicuousness and clarity of language alone may not be enough to satisfy the requirement of awareness. Where a contractual provision would defeat the 'strong' expectation of the weaker party, it may also be necessary to call his attention to the language of the provision.") (quoting

---

5. The Court further notes that despite defendants' argument that Y.G.'s mother could have requested a due process hearing to challenge the June 2009 IEP, the FAC alleges that defendants failed to provide her a prior written notice upon which she could base a request for a due process hearing, in violation of 20 U.S.C. § 1415(b)(3). FAC ¶ 27.

*Wheeler v. St. Joseph Hosp.,* 63 Cal.App.3d 345, 359–60, 133 Cal.Rptr. 775 (1976)). The Court finds these allegations sufficient to establish some degree of procedural unconscionability. Furthermore, although defendants do not challenge the allegations in the FAC with respect to substantive unconscionability, plaintiffs maintain that the FAC sufficiently alleges the element of substantive unconscionability. *See* Opp'n at 18–19. The Court finds that determining whether the terms of the Agreement are substantively unconscionable, and the relative degrees of procedural and substantive unconscionability, is better considered on a motion for summary judgment with a more complete record.

## 2. Doctrine of Waivers

■ Plaintiffs further allege that the Agreement is void and unenforceable under California Civil Code §§ 1668 and 3513 because it contains a waiver of substantive rights that cannot be waived. FAC ¶¶ 85 and 90.

■ Civil Code § 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for ... violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ.Code § 1668. Section 3513 states that "[a]ny one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement." Cal. Civ.Code § 3513. "A party may waive a statutory right where its public benefit is merely incidental to its primary purpose, but a waiver is unenforceable where it would seriously compromise any public purpose that the statute was intended to serve." *Azteca Constr., Inc. v. ADR Consulting, Inc.,* 121 Cal.App.4th 1156, 1166, 18 Cal.Rptr.3d 142 (2004) (internal quotations and alterations omitted). Sec-

tion 3513 prohibits a waiver of statutory rights where one of the primary purposes of the statute is to benefit the public. *Id.*

Defendants argue that plaintiffs fail to state a claim under sections 1668 and 3513 because the Agreement is a private settlement agreement pertaining to an individual student and parent, and not the public at large. Mot. at 18–20. Defendants assert that to find otherwise would potentially render the majority of waivers set forth in settlement agreements entered into by parties in special education matters void on the basis that said agreements are primarily for the public purpose. *Id.* at 19. Defendants further argue that the Agreement does not seriously compromise any public purpose of the IDEA because the term of the Agreement has expired, and plaintiffs benefitted from the Agreement by having Y.G. placed in the sixth grade for the 2009–2010 school year. *Id.* at 20. Defendants maintain that the Agreement is not void as against public policy because public policy encourages the making of contracts "unless it is entirely plain that a contract is violative of sound public policy...." *Id.* (quoting *Bovard v. Am. Horse Enters.,* 201 Cal.App.3d 832, 839, 247 Cal. Rptr. 340 (1988)).

Plaintiffs respond that the IDEA and the Education Code were enacted for a public purpose, and that their procedural protections are not subject to a blanket waiver on a prospective basis. Opp'n at 20–21 (citing *Valles v. Ivy Hill Corp.,* 410 F.3d 1071, 1080–81 (9th Cir.2005) (right to meal periods under California law cannot be waived in collective bargaining agreement); *Gentry v. Super. Ct.,* 42 Cal.4th 443, 455–56, 64 Cal.Rptr.3d 773, 165 P.3d 556 (2007) (rights to minimum wage and overtime compensation conferred by statute are unwaivable)). Plaintiffs argue that defendants' contention that the waiver in the Agreement would be void only if defendants waived their obligations under the

IDEA and Education Code to the public at large ignores that the statutory protections at issue are designed to guarantee individuals, such as plaintiffs, certain procedural safeguards. *Id.* at 21. Finally, relying on *Tunkl v. Regents of Univ. of Cal.*, 60 Cal.2d 92, 98, 32 Cal.Rptr. 33, 383 P.2d 441 (1963) and *City of Santa Barbara v. Super. Ct.*, 41 Cal.4th 747, 756, 62 Cal. Rptr.3d 527, 161 P.3d 1095 (2007), plaintiffs argue that the purported waiver of Y.G.'s substantive right to a FAPE for the 2009–2010 school year is void on public policy grounds. *Id.* at 19–20.

The Court finds that the allegation that a prospective waiver of procedural and substantive rights under the IDEA may be void as against public policy pursuant to California Civil Code §§ 1668 and 3513 is "plausible on its face," and therefore sufficient to defeat a motion to dismiss. *Ashcroft*, 129 S.Ct. at 1949–50. Even though the facts alleged are sufficient to state a claim at this stage, the Court cannot determine the scope of the waiver or its validity without considering the actual Agreement and the facts surrounding its execution, none of which is presently part of the record.

Accordingly, the Court DENIES defendants' motion to dismiss plaintiffs' third claim.

**C. Claims 4, 5, 6, 7, and 8: ADA, Rehabilitation Act, California Government Code § 11135, the Unruh Act, and California Civil Code §§ 54 and 54.1** [6]

 Plaintiffs allege a so-called "methods of administration" claim under

the Americans with Disabilities Act ("ADA") and Rehabilitation Act regulations. Those regulations provide, *inter alia*, that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration . . . [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. . . ." 28 C.F.R. § 35.130(b)(3); *see also* 28 C.F.R. § 41.51(b)(3) (Rehabilitation Act regulation). Plaintiffs allege that defendants' use of the Agreement, as well as the process by which defendants secured the Agreement, constitutes a method of administration that subjects children with disabilities and their parents to discrimination by circumventing the objectives of the IDEA and Part 30 of the California Education Code. *See* FAC ¶¶ 102, 103, 105, 116, 125, 132, and 140.

Defendants move to dismiss plaintiffs' claims on the grounds that the Agreement signed by Y.G.'s mother does not constitute a "method of administration" as that term is defined. Mot. at 11. Relying upon *Cota v. Maxwell–Jolly*, 688 F.Supp.2d 980, 995–96 (N.D.Cal.2010), defendants ask the Court to narrowly construe "method of administration" as prohibiting only blatantly exclusionary policies and practices that result in a "disparate impact" on a particular class of disabled individuals. *Id.* Defendants contend that the allegation that a public agency has the ability to enter into settlement agreements

6. Because there is no significant difference between the substantive standards of the ADA and the Rehabilitation Act, the claims may be analyzed together. *See Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1047 n. 7 (9th Cir.2009). Furthermore, a violation of the right of any individual under the ADA constitutes a violation of the Unruh Civil Rights Act

and California Civil Code §§ 54 and 54.1. *See* Cal. Civ.Code §§ 51(f), 54(c), 54.1(d). Finally, California Government Code § 11135 is identical to the Rehabilitation Act, except the entity must receive State financial assistance. *See D.K. v. Solano County Office of Educ.*, 667 F.Supp.2d 1184, 1190–91 (E.D.Cal.2009).

with other parties does not rise to the level of a method of administration resulting in discrimination. *Id.* at 12.

Defendants reliance on *Cota* is misplaced for two reasons. First, in holding that a facially neutral policy may constitute a discriminatory method of administration, the court in *Cota* found that a showing of a disparate impact was *sufficient* to establish a violation of section 35.130(b)(3), but did not hold that it was *necessary*. *See Cota,* 688 F.Supp.2d at 996 ("The disparate impact occasioned by such requirements ... on a particular class of disabled persons is *sufficient* to demonstrate a violation of section 35.130(b)(3).") (emphasis supplied). Second, in *Cota,* the court analyzed a methods of administration claim brought under section 35.130(b)(3)(i), which provides that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration ... [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability ...." *See Cota,* 688 F.Supp.2d at 995. Here, by contrast, plaintiffs assert a methods of administration claim under section 35.130(b)(3)(ii), which provides that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration ... [t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals

with disabilities...." *See* FAC ¶¶ 102 and 103; *see also* 28 C.F.R. § 41.51(b)(3)(ii). The Court concludes that plaintiffs have sufficiently alleged that defendants utilize the Agreements for the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the substantive and procedural requirements of the IDEA and the Education Code.[7] Accordingly, the Court DENIES defendants' motion to dismiss plaintiffs' fourth, fifth, sixth, seventh and eighth claims.

## V. CONCLUSION

In accordance with the foregoing, the Court hereby DENIES defendants' motion to dismiss.

IT IS SO ORDERED.

---

7. Defendants further argue that Y.G.'s mother may not assert an associational claim under the ADA or Rehabilitation Act because defendants do not provide her services or programs, and there are no allegations that she has been subjected to discrimination based on her association with her daughter. Mot. at 12–13. Defendants' argument is without merit. 28 C.F.R. § 35.130(g) provides, "A public entity shall not exclude or otherwise deny equal services; programs, or activities to

an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." The Court finds that Y.G.'s mother may maintain an associational claim under the ADA because parents have independent enforceable rights under the IDEA to which plaintiffs allege defendants have denied Y.G.'s mother access. *See Winkelman,* 550 U.S. at 533, 127 S.Ct. 1994.