Filed 5/31/23  Tielemans v. Aegion Energy Services CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| OTTO TIELEMANS, | H049635 |
| | Santa Clara County |
| Plaintiff and Appellant, | Super. Ct. No. 19CV349343 |
| v. | |
| AEGION ENERGY SERVICES, INC., et al., | |
| Defendants and Respondents. | |

Otto Tielemans sued his former employer on behalf of himself and a putative class, asserting nine causes of action related mostly to alleged wage-and-hour violations of the Labor Code.  Defendants petitioned to compel arbitration pursuant to mandatory arbitration provisions in two collective bargaining agreements that bound the parties.

Tielemans opposed the petition, arguing that (1) a union cannot prospectively waive its members' right to bring statutory claims in court, (2) even if it could, the arbitration provisions here did not clearly and unmistakably waive that right, and (3) the arbitration provisions were procedurally and substantively unconscionable in numerous respects, and therefore should not be enforced.

The trial court held that a union may waive its members' right to bring statutory claims in court and the arbitration provisions at issue here clearly and unmistakably waived that right.  It also determined two aspects of the arbitration provisions to be unconscionable, but severed those portions, enforced the remainder, and granted the petition.

On appeal, Tielemans re-states his unsuccessful arguments from below and contends the trial court abused its discretion by severing the offending provisions and enforcing the remainder of the agreements.

We reject Tielemans' arguments and affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *Factual background*

Tielemans was employed as an hourly, nonexempt construction laborer by Schultz Industrial Services, Inc., formerly known as Schultz Mechanical Contractors, Inc. (Schultz), between August 10, 2016 and July 3, 2018.  While employed by Schultz, Tielemans was a member of Local Union No. 585 in Ventura, part of the Southern California District Council of Laborers, affiliated with the Laborers' International Union of North America, AFL-CIO (SCDCL-LiUNA).

In March 2018, Schultz joined the Association of Construction Employers (ACE), thereby designating ACE as its collective bargaining representative in relation to specified labor organizations and their affiliates, including SCDCL-LiUNA.  Earlier, on July 1, 2015, ACE executed a collective bargaining agreement (CBA) on behalf of its members with SCDCL-LiUNA, which entered on behalf of itself and its affiliated local unions (2015 CBA).  After Schultz joined ACE, ACE notified SCDCL-LiUNA that it represented Schultz in all collective bargaining or labor relations matters under the 2015 CBA.

The 2015 CBA covered the period from July 1, 2015 to June 30, 2018.[1]  On July 1, 2018, ACE and SCDCL-LiUNA executed a new CBA covering the period from that date until June 30, 2022 (2018 CBA).  The 2015 CBA and the 2018 CBA appear to be

---

[1] Although Tielemans had been employed with Schultz for roughly 18 months prior to Schultz joining ACE, he concedes on appeal that he was bound by the 2015 CBA and the subsequent 2018 CBA during his employment with Schultz.

2

identical with respect to the relevant provisions at issue in this appeal—the parties have not identified any differences between the CBAs, other than the applicable dates.

Among other things, both CBAs included mandatory arbitration provisions, which state: "[A]ll employee disputes concerning violations of, or arising under Wage Order 16 (except as noted in the immediately preceding paragraph), the California Labor Code Sections identified in California Labor Code section 2699.5 as amended, the California Private Attorneys General Act (Labor Code section 2698, et seq.), and federal, state and local law concerning wage-hour requirements, wage payment and meal or rest periods, including claims arising under the Fair Labor Standards Act . . . shall be subject to and must be processed by the employee pursuant to the procedures set forth in this Appendix C as the sole and exclusive remedy."[2]  The provisions then set forth the mandatory procedures for arbitrating such disputes.

Relevant to this appeal, the arbitration provisions included language governing the costs of arbitration, which states:  "The Contractor shall pay all fees and costs related to the services of the American Arbitration Association and the services of the Arbitrator; however, the Arbitrator may reallocate such fees and costs in the arbitration award, giving due consideration to the individual employee's ability to pay."  As discussed below, the trial court determined that constituted an impermissible fee-shifting provision which Tielemans contends contributes to the overall unconscionability of the CBAs.

In addition, the arbitration provisions included language which states:  "The Arbitrator shall not have any authority to award relief that would require amendment of the Master Labor Agreement or other agreement(s) between the Union and a Contractor or the Contractors, or which conflicts with any provision of any collective bargaining

---

[2] Wage Order 16 is a wage order issued by the California Industrial Welfare Commission that regulates wages, hours and working conditions of nonexempt employees in on-site construction, drilling, logging and mining industries.  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1031; Cal. Code Regs., tit. 8, § 11160.)

3

agreement or such other agreement(s). Any arbitration outcome shall have no precedential value with respect to the interpretation of the Master Labor Agreement or other agreement(s) between the Union and a Contractor or the Contractors." As discussed below, Tielemans contends this language contributes to the overall unconscionability of the CBAs because it could be interpreted to preclude claims for public injunctive relief.

Lastly, the arbitration provisions included a savings clause, which provides: "It is not the intent of either the Contractors or the Union to violate any laws, rulings or regulations of any Governmental authority or agency having jurisdiction of the subject matter of this Agreement, and the Contractor and the Union agree that, in the event any provision of this Agreement is finally held or determined to be illegal or void, as being in contravention of any such laws, rulings, or regulations, the remainder of the Agreement shall remain in full force and effect, unless the part so found to be void is wholly inseparable from the remaining portion of this Agreement."

### B. *Procedural background*

Tielemans filed his complaint in Santa Clara County Superior Court on June 19, 2019. On August 23, 2019, he filed the operative first amended complaint (complaint), naming Schultz and Aegion Energy Services, Inc., as defendants.[3] The complaint purported to bring a "class and representative action" that asserted nine causes of action: (1) failure to provide proper disclosure in violation of the Fair Credit Reporting Act (15 U.S.C. § 1681b(b)(2)(A)); (2) failure to provide meal periods (Lab. Code, §§ 204, 223, 226.7, 512, 1198); (3) failure to provide rest periods (Lab. Code, §§ 204, 223, 226.7, 1198); (4) failure to pay hourly and overtime wages (Lab. Code, §§ 223, 510, 1194, 1194.2, 1197, 1197.1, 1198); (5) failure to indemnify (Lab. Code, § 2802); (6) failure to

---

[3] Aegion Energy Services, Inc., is the parent and holding company of Schultz. We refer to the defendants collectively in this appeal as "Schultz."

4

provide accurate, written wage statements (Lab. Code, § 226); (7) failure to timely pay all final wages (Lab. Code, §§ 201-203); (8) unfair competition (Bus. & Prof. Code, § 17200 et seq.); and (9) civil penalties (Lab. Code, § 2698 et seq.) pursuant to the Private Attorneys General Act (PAGA).

On October 23, 2019, Schultz filed a petition to compel arbitration and stay the proceedings, pursuant to Code of Civil Procedure sections 1281.2 and 1281.4. Schultz argued that the second through eighth causes of action must be arbitrated pursuant to the arbitration provisions and both California and federal law. Specifically, Schultz contended that the arbitration provisions explicitly apply to all claims brought under Wage Order 16, the Labor Code sections identified in section 2699.5,[4] and California law concerning wage-hour requirements, wage payment and meal and rest periods. According to Schultz, Tielemans' second through eighth causes of actions were predicated entirely on claims brought pursuant to those laws. Further, Schultz argued that all causes of action, including the ones not subject to mandatory arbitration—the Fair Credit Reporting Act and the PAGA cause of action—should be stayed pursuant to Code of Civil Procedure section 1281.4.

Tielemans opposed the motion, arguing that the arbitration provisions should be invalidated because they are procedurally and substantively unconscionable. Specifically, he argued that the provisions constituted adhesion contracts because they were a nonnegotiable condition of employment, and that they were substantively unconscionable because they purported to waive representative claims under PAGA and the right to seek public injunctive relief, and contained impermissible fee-shifting language. Further, Tielemans argued that the arbitration provisions did not clearly and

---

[4] Labor Code section 2699.5 lists numerous other Labor Code sections subject to specific administrative procedures for PAGA actions to recover civil penalties for alleged violations. (Lab. Code, § 2699.5.)

unmistakably waive the right to litigate statutory wage and hour claims in a judicial forum.

A hearing on the petition to compel was held on January 17, 2020. Following the hearing, the trial court issued its order granting the petition. The court first determined that the parties are bound by the CBAs and the arbitration provisions. It then held that the arbitration provisions contain a clear and unmistakable waiver of the right to bring the specified statutory claims in court. The court also determined the arbitration provisions are not procedurally unconscionable because there was no evidence the CBAs were the product of anything other than arms-length negotiations between SCDCL-LiUNA and ACE.

The trial court agreed with Tielemans that the arbitration provisions were unconscionable in two respects—the fee-shifting provisions and the waiver of representative claims under PAGA. However, the court exercised its discretion to sever the offending provisions and enforce the remainder of the agreements. The court explained that the fee-shifting provisions were collateral to the main purpose of the contracts, "which is to provide a mechanism to resolve disputes," and noted that the CBAs include a savings clause providing that provisions determined to be illegal shall be severed and the remainder of the agreements shall remain in effect. The court therefore granted the petition and stayed the action in its entirety pending completion of arbitration of Tielemans' second through eighth causes of action.[5]

The matter proceeded to arbitration, after which the arbitrator found in favor of Schultz on all claims on June 22, 2021. Tielemans filed a petition to confirm the award on August 27, 2021. The trial court granted the petition and entered judgment on January 20, 2022.

---

[5] The parties subsequently stipulated to dismiss the first cause of action regarding alleged violations of the Fair Credit Reporting Act.

6

Tielemans timely appealed.[6]

## II. DISCUSSION

Tielemans argues on appeal that (1) there was no clear and unmistakable waiver of a judicial forum; (2) the arbitration provisions are procedurally unconscionable because they are adhesion contracts; and (3) the arbitration provisions are permeated with unconscionability because they contain at least three offending terms, so the trial court abused its discretion by severing them.

As we explain below, we determine Tielemans' arguments lack merit.

### A. *Applicable law and standard of review*

Both California and federal law have statutory schemes for the enforcement of arbitration agreements. (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 761.) "The California Arbitration Act . . . sets forth 'a comprehensive statutory scheme regulating private arbitration in this state.' [Citation.] The Federal Arbitration Act (FAA; 9 U.S.C. §§ 1-14) governs contractual arbitration in written contracts involving interstate or foreign commerce. (9 U.S.C. §§ 1, 2.)" (*Ibid.*, quoting *Moncharsh v. Heily & Blasé* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).)[7]

---

[6] "An order granting a petition to compel arbitration is not appealable, but is reviewable on appeal from a subsequent judgment on the award." (*Ashburn v. AIG Financial Advisors, Inc.* (2015) 234 Cal.App.4th 79, 94; Code Civ. Proc., § 1294.2.)

[7] Although the FAA and accompanying federal law do not apply in California courts in every instance, the parties appear to concede that they apply here. (See, e.g., *Brinkley v. Monterey Financial Services, Inc.* (2015) 242 Cal.App.4th 314, 326 [FAA applies to a contract that " 'evidences a transaction involving interstate commerce' "], quoting *Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1101; *Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 968 [FAA preempts all state laws and rules that conflict with FAA's provisions or objective of enforcing arbitration agreements], citing 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 341.) The arbitration provisions in the CBA also expressly reference federal law: "The Parties to this Agreement recognize that the Supreme Court of the United States has consistently held for over fifty years that federal (continued)

"California law strongly favors arbitration. Through the comprehensive provisions of the California Arbitration Act (Code Civ. Proc., § 1280 et seq.), 'the Legislature has expressed a "strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." ' " (*OTO*, *L.L.C.* v. *Kho* (2019) 8 Cal.5th 111, 125 (*OTO*), quoting *Moncharsh*, *supra*, 3 Cal.4th at p. 9.) "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists." (Code Civ. Proc., § 1281.2; *Wilson-Davis* v. *SSP America*, *Inc.* (2021) 62 Cal.App.5th 1080, 1092.)

"California law establishes 'a presumption in favor of arbitrability.' " (*OTO*, *supra*, 8 Cal.5th at p. 125, quoting *Engalla* v. *Permanente Medical Group*, *Inc.* (1997) 15 Cal.4th 951, 971.) "An agreement to submit disputes to arbitration 'is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract.' " (*OTO*, *supra*, at p. 125, quoting Code Civ. Proc., § 1281.) In general, the validity and enforceability of an arbitration agreement is governed by state law applicable to contracts, "to the extent it does not conflict with the [Federal Arbitration Act]." (*Dotson* v. *Amgen*, *Inc.* (2010) 181 Cal.App.4th 975, 980 (*Dotson*), citing Code Civ. Proc., § 1280 et seq. [California Arbitration Act].)

However, "the presumption of arbitration in a CBA does not apply to statutory violations." (*Cortez* v. *Doty Bros. Equipment Co.* (2017) 15 Cal.App.5th 1, 12 (*Cortez*), citing *Wright* v. *Universal Maritime Service Corp.* (1998) 525 U.S. 70, 78-79 (*Wright*); *Wright*, at pp. 78-79 [cases involving statutory claims "ultimately concern[] not the application or interpretation of any CBA, but the meaning of a . . . statute"]; *Wright*, at

---

law and policy favors the use and finality of arbitration procedures established through collective bargaining agreements to resolve all nature of disputes affecting the employee-employer relationship."

p. 79 [and rights "distinct from any right conferred by" the CBA].)  "Thus, although a union representative in negotiating a CBA in good faith may waive the employee's right to pursue in a judicial forum an action for a statutorily protected right . . . the United States Supreme Court has made clear that waiver of the right to prosecute a statutory violation in a judicial forum is only effective if it is explicit, ' "clear and unmistakable." ' " (*Cortez*, *supra*, at p. 12.)

" ' "[G]enerally applicable contract defenses, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA' or California law." (*OTO*, *supra*, 8 Cal.5th at p. 125, quoting *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).)  "Unconscionability can take different forms depending on the circumstances and terms at issue.  However, the doctrine's application to arbitration agreements must rely on the same principles that govern all contracts." (*OTO*, *supra*, at p. 125, citing *Sonic Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133.)  "The degree of unfairness required for unconscionability must be as rigorous and demanding for arbitration clauses as for any other contract clause." (*OTO*, *supra*, at p. 125.)

"A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.  [Citation.]  Under this standard, the unconscionability doctrine ' "has both a procedural and a substantive element." ' [Citation.]  'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.  [Citations.]  Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.' " (*OTO*, *supra*, 8 Cal.5th at p. 125, quoting *Pinnacle*, *supra*, 55 Cal.4th at p. 246.)

"Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.' " (*OTO*, *supra*, 8

9

Cal.5th at p. 125, quoting *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).) "Instead, they are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to' conclude that the term is unenforceable. [Citation.] Conversely, the more deceptive or coercive the bargaining tactics employed, the less substantive unfairness is required." (*OTO, supra*, at p. 125, quoting *A&M Produce Co. v. FMC Corp.* (1982) 135 Cal.App.3d 473, 487.) "The burden of proving unconscionability rests upon the party asserting it." (*OTO, supra*, at p. 126, citing *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 911.)

Where a trial court determines that an agreement contains one or more unconscionable provisions, the court has the discretion to determine whether to sever or restrict those provisions, or to refuse to enforce the entire agreement if the court concludes the agreement is " 'permeated' " by unconscionability. (*Armendariz, supra*, 24 Cal.4th at p. 122.)

Where the evidence is not in conflict, a Court of Appeal reviews the trial court's ruling on a petition to compel arbitration de novo. (*OTO, supra*, 8 Cal.5th at p. 125.) We review the decision to sever unconscionable provisions for abuse of discretion. (*Armendariz, supra*, 24 Cal.4th at p. 122.)

### B. Analysis

#### 1. Union's waiver of employee's right to judicial forum

Tielemans first argues that a union cannot prospectively waive an employee's right to a judicial forum when statutory claims are at issue.[8] However, California courts

---

[8] Tielemans appears to abandon this claim in his reply brief, when he states that "the issue to be decided by this Court is not *whether* the union may waive Appellant's right to prosecute a statutory violation in a judicial forum, but whether such a waiver was 'clear and unmistakable.' " Despite this apparent concession, we address the argument because our function to correctly interpret the law is not controlled by a party's
(continued)

10

have recently rejected that argument, holding instead that "a union representative in negotiating a CBA in good faith may waive the employee's right to pursue in a judicial forum an action for a statutorily protected right." (*Cortez*, *supra*, 15 Cal.App.5th at p. 11; see also *Volpei v. County of Ventura* (2013) 221 Cal.App.4th 391; *Choate v. Celite Corp.* (2013) 215 Cal.App.4th 1460, 1465 [CBA validly waives union member's right to litigate federal or state claims in a judicial forum only if the waiver is clear and unmistakable]; cf. *Vasserman v. Henry Mayo Newhall Memorial Hospital* (2017) 8 Cal.App.5th 236 (*Vasserman*) [declining to decide the issue because the court determined the CBAs had not clearly and unmistakably waived the right to a judicial forum].)

Those cases followed the United States Supreme Court's decision in *14 Penn Plaza LLC v. Pyett* (2009) 556 U.S. 247 (*Penn Plaza*), which held that a collective bargaining agreement can require union members to arbitrate statutory claims, provided that it does so clearly and unmistakably. (*Id.* at p. 274.) The Supreme Court explained that requiring arbitration does not constitute a waiver or forfeiture of the substantive statutory right, but rather only the right to seek relief from a court, as opposed to an arbitrator, in the first instance. (*Id.* at p. 265; see also *Armendariz*, *supra*, 24 Cal.4th at pp. 98-99 [" '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by statute; it only submits to their resolution in an arbitral, rather than a judicial, forum' "].)

Tielemans cites a number of California cases to support his position, but they mostly pre-date the United States Supreme Court's decision in *Penn Plaza* and the subsequent California decisions that followed it. (See, e.g., *Zavala v. Scott Brothers Dairy, Inc.* (2006) 143 Cal.App.4th 585; *Torrez v. Consolidated Freightways Corp.* (1997) 58 Cal.App.4th 1247 (*Torrez*); *Deschene v. Pinole Point Steel Co.* (1999) 76

concession. (*R.J. Land & Associates Construction Co. v. Kiewit-Shea* (1999) 69 Cal.App.4th 416, 427.)

11

Cal.App.4th 33; see also *Cortez*, *supra*, 15 Cal.App.5th at p. 12, fn. 1 [recognizing that cases such as *Zavala* pre-dated *Penn Plaza*].)

In *Torrez*, this court interpreted United States Supreme Court precedent at the time to hold that "a union may not prospectively waive an employee's right to a judicial forum to hear his or her statutory discrimination claims." (*Torrez*, *supra*, 58 Cal.App.4th at p. 1259; *Barrentine v. Arkansas-Best Freight System, Inc.* (1981) 450 U.S. 728 (*Barrentine*); *Alexander v. Gardner-Denver Co.* (1974) 415 U.S. 36; *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20.) Twelve years later in *Penn Plaza*, the United States Supreme Court addressed the specific federal cases we relied on in *Torrez* and reversed the Court of Appeals for the Second Circuit, which had "attempted to reconcile *Gardner-Denver* and *Gilmer* by holding that arbitration provisions in a collective-bargaining agreement, 'which purport to waive employees' rights to a federal forum with respect to statutory claims, are unenforceable.' " (*Penn Plaza*, *supra*, 556 U.S. at p. 255.) The Supreme Court explained that "*Gardner-Denver* and its progeny thus do not control the outcome where, as is the case here, the collective-bargaining agreement's arbitration provision expressly covers both statutory and contractual discrimination claims." (*Id*. at p. 264.)[9]

In light of *Penn Plaza* and subsequent California authority relying on it, we do not find the authority cited by Tielemans controlling here.

---

[9] Subsequent cases have also applied the same maxim to both Labor Code claims and discrimination claims. (See, e.g., *Cortez*, *supra*, 15 Cal.App.5th at p. 12, fn. 1 [rejecting argument that the holding in *Penn Plaza* should be limited to discrimination claims—"in holding that statutory violations could be subject to arbitration if clearly and unmistakably bargained for in the CBA, the *Penn Plaza* court distinguished the arbitration provision in *Barrentine* on the ground it 'did not expressly reference the statutory claim at issue' and was thus not sufficiently clear and explicit to support a waiver. [Citation.] Of course, the necessary implication of that holding is that a clear and explicit agreement to arbitrate wage and hour claims would be enforceable"].)

Tielemans also cites *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, which was decided after *Penn Plaza* and held that "state statutory wage and hour claims are not subject to arbitration, whether the arbitration clause is contained in the CBA or an individual agreement." (*Id.* at p. 1206.) However, *Hoover* relied on *Zavala* and United States Supreme Court precedent that pre-dated *Penn Plaza*, and did not acknowledge or address *Penn Plaza*. (*Ibid.*, citing *Barrentine*, *supra*, 450 U.S. 728 [union representative could not waive on employee's behalf employee's right to pursue in court wage and hour claims under the Fair Labor Standards Act].) To the extent *Hoover* is inconsistent with *Cortez* and *Penn Plaza*, we decline to follow it. (See, e.g., *Cortez*, *supra*, 15 Cal.App.5th at p. 12, fn. 1 [recognizing that *Barrentine* and *Zavala* pre-dated *Penn Plaza*]; see also *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 686 [questioning *Hoover* and affirming that "even statutory claims based on nonnegotiable or unwaivable rights may be subject to arbitration agreements, provided that arbitration allows the plaintiff to fully vindicate his or her statutory cause of action in the arbitral forum"].)

In sum, an employee may be required to arbitrate statutory claims where the union has entered into a collective bargaining agreement with a mandatory arbitration provision.

### 2. *Clear and unmistakable waiver*

Tielemans argues that, even if a union can prospectively waive its employees' right to bring statutory claims in court, the arbitration provisions in the CBAs here did not include the requisite clear and unmistakable waiver of that right.

A "waiver of the right to prosecute a statutory violation in a judicial forum is only effective if it is explicit, ' "clear and unmistakable." ' " (*Cortez*, *supra*, 15 Cal.App.5th at p. 12, quoting *Penn Plaza*, *supra*, 556 U.S. at p. 254; *Wright*, *supra*, 525 U.S. at p. 80.) "[I]n determining whether there has been a sufficiently explicit waiver, courts look to the generality of the arbitration clause, explicit incorporation of statutory requirements, and

13

the inclusion of specific contractual provisions." (*Vasserman*, *supra*, 8 Cal.App.5th at p. 246, citing *Vasquez v. Superior Court* (2000) 80 Cal.App.4th 430, 434.) A " 'waiver in a collective bargaining agreement is sufficiently clear if it is found in an explicit arbitration clause. "Under this approach, the [collective bargaining agreement] must contain a clear and unmistakable provision under which the employees agree to submit to arbitration all [state and federal statutory] causes of action arising out of their employment." ' " (*Vasserman*, *supra*, at pp. 246-247, quoting *Vasquez*, *supra*, at p. 435.)

Applying those standards here, the question is whether the arbitration provisions include an explicitly stated, clear and unmistakable intent to waive the right to a judicial forum for the specific statutory causes of action Tielemans has alleged. (*Vasserman*, *supra*, 8 Cal.App.5th at p. 246.) We hold that they do.[10]

As summarized above, the second through eighth causes of action allege violations of: Labor Code sections 204, 223, 226.7, 512, 1198 (failure to provide meal periods), Labor Code sections 204, 223, 226.7, 1198 (failure to provide rest periods), Labor Code sections 223, 510, 1194, 1194.2, 1197, 1197.1, 1198 (failure to pay hourly and overtime wages), Labor Code section 2802 (failure to indemnify), Labor Code Section 226 (failure to provide accurate, written wage statements), Labor Code sections 201 through 203 (failure to timely pay all final wages), and Business and Professions Code section 17200 et seq. (unfair competition).

The arbitration provisions referenced "the Labor Code Sections identified in Labor Code section 2699.5," which section itself expressly identifies dozens of Labor Code sections which are also subject to the administrative procedures of Labor Code section 2699.3, subdivision (a). (Lab. Code, § 2699.5.) Those sections include each of the

---

[10] As a threshold matter, Tielemans does not contend that the arbitration provisions do not include an explicitly stated, clear and unmistakable intent to waive the right to a judicial forum *at all*—rather, he argues only that the provisions do not clearly identify the specific statutory claims at issue.

14

specific Labor Code sections identified in the allegations in Tielemans' complaint. The arbitration provisions also expressly reference Wage Order 16, as well as "federal, state and local law concerning wage-hour requirements, wage payment and meal or rest periods."

Tielemans' own allegations in the complaint assert that the claims in the second through seventh causes of action all arise from the referenced Labor Code sections or Wage Order 16. For instance, the second cause of action alleges that Tielemans has been "entitled to the full meal period protections of both the Labor Code and the applicable Industrial Welfare Commission Wage Order." The third through seventh causes of action include similar allegations with express references to the specific Labor Code sections included in section 2699.5, Wage Order 16, or both. And the eighth cause action for unfair competition expressly alleges that it is based on the same alleged violations of the Labor Code and Wage Order.

Tielemans argues that the arbitration provisions do not "expressly identify the statutes covered by the grievance procedure, but rather only describe it in vague and ambiguous terms." We disagree. The provisions specifically identify "the Labor Code Sections identified in Labor Code section 2699.5" and Wage Order 16. Under the standards discussed above, that constitutes a clear and unmistakable waiver. (*Cortez*, *supra*, 15 Cal.App.5th at pp. 12-14.)

Tielemans also argues that the reference to Labor Code section 2699.5 is insufficient because the statutes referred to therein are "inextricably tied to PAGA penalties" and "all relate to the PAGA claims." Tielemans appears to be arguing that, because section 2699.5 is part of PAGA—and employees may not waive their right to bring representative PAGA claims in a judicial forum—the arbitration provisions' reference to section 2699.5 does not constitute a valid waiver. However, PAGA is a procedural statute—that is, it simply allows an aggrieved employee to recover civil penalties " 'that otherwise would be sought by state labor law enforcement agencies.' "

15

(*Wesson v. Staples the Office Superstore*, *LLC* (2021) 68 Cal.App.5th 746, 760, quoting *Amalgamated Transit Union*, *Local 1756*, *AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.) But the Labor Code sections referenced in section 2699.5 also exist independent of PAGA, and Tielemans' second through eighth causes of action allege violations of those sections independent of PAGA as well. Accordingly, the fact that Labor Code section 2699.5 and related PAGA statutes also create a separate mechanism for aggrieved employees to recover civil penalties for violations of the underlying Labor Code sections does not preclude a party from stating claims for violations outside of PAGA, as Tielemans has done. Nor does it render the waivers in the arbitration provisions at issue here less than clear and unmistakable.[11]

Lastly, Tielemans argues that the trial court improperly analogized to *Penn Plaza* in holding that the arbitration provisions satisfied the "clear and unmistakable" standard, because that issue was not present in *Penn Plaza*. However, we do not review the trial court's reasoning, rather only its ruling. (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 686.) In any event, the trial court did not rely on *Penn Plaza* as authority for its determination that the arbitration provisions here included a clear and unmistakable waiver. Instead, it relied on *Penn Plaza* for the general proposition that a union may waive its employees' right to bring statutory claims in court, and it analogized to *Cortez* in support of its conclusion that the arbitration provisions here included a clear and unmistakable waiver.

### 3. *Procedural unconscionability*

Tielemans argues that the arbitration provisions are procedurally unconscionable because the CBAs were adhesion contracts. Specifically, he contends that he "had no

---

[11] For the same reasons, we reject Tielemans' argument that "[b]y severing the PAGA waiver, the trial court must necessarily strike the reference to Labor Code sections 2698 *et seq.* and 2699.5." The arbitration provisions did not refer to claims brought pursuant to Labor Code section 2699.5, but rather to claims brought pursuant to the other Labor Code sections identified therein.

16

choice but to accept the terms of the CBA as is, and that he was not in equal bargaining power" with Schultz.

Procedural unconscionability " 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' " (*OTO*, *supra*, 8 Cal.5th at p. 125.) "A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' " (*Id*. at p. 126, quoting *Armendariz*, *supra*, 24 Cal.4th at p. 113.) "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' " (*OTO*, *supra*, at p. 126, quoting *Baltazar v. Forever 21, Inc*. (2016) 62 Cal.4th 1237, 1245 (*Baltazar*).) "Arbitration contracts imposed as a condition of employment are typically adhesive." (*OTO*, *supra*, at p. 126, citing *Armendariz*, *supra*, at pp. 114-115; *Serpa v. California Surety Investigations, Inc*. (2013) 215 Cal.App.4th 695, 704.)

" '[T]here are degrees of procedural unconscionability. At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. [Citation.] Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced [citation] contain a degree of procedural unconscionability even without any notable surprises, and "bear within them the clear danger of oppression and overreaching." ' " (*Baltazar*, *supra*, 62 Cal.4th at p. 1244, quoting *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 469.)

The "pertinent question . . . is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required." (*OTO*, *supra*, 8 Cal.5th at p. 126; *Baltazar*, *supra*, 62 Cal.4th at pp. 1245-1246.) " ' "*Oppression* occurs where a contract involves lack of negotiation and meaningful

17

choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form." ' " (*Pinnacle*, *supra*, 55 Cal.4th at p. 247, italics added.)

Tielemans has failed to show that the CBAs are adhesion contracts or that their formation created any element of oppression or surprise. First, not every employment contract is an adhesion contract, and collective bargaining agreements are not ordinary contracts themselves. (See, e.g., *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 416, fn. 9 [CBAs are " 'unique in character' "; "concept of adhesion seems inconsistent with the substantive legal requirement . . . that parties to a collective bargaining agreement must negotiate with one another in good faith"].)

Second, Tielemans has not identified any evidence demonstrating oppression or surprise here. On the contrary, the only evidence he cites is Schultz's argument in its petition to compel arbitration that the CBAs were entered into by SCDCL-LiUNA on behalf of itself and its affiliated local unions, and not with Tielemans himself. According to Tielemans, because he was not a party to the CBAs, that demonstrates that he "had no choice but to accept the terms." But Tielemans again ignores the fact that the CBAs were the product of arms-length negotiations between the union and ACE. He also fails to identify any evidence regarding the circumstances of the CBAs' formation, or anything else implicating its overall fairness. (*OTO*, *supra*, 8 Cal.5th at p. 126; *Baltazar*, *supra*, 62 Cal.4th at pp. 1245-1246.) We agree with the trial court's conclusion that Tielemans "does not assert any portion of the CBAs was hidden or that he was prevented from reading the CBAs before becoming bound to the agreements."

Tielemans has failed to carry his burden of demonstrating procedural unconscionability.

### 4. *Severability of unconscionable provisions*

Tielemans argues that, because the arbitration provisions contain three "offending terms," they are "permeated with unconscionability" and should not be enforced. Tielemans identifies the two provisions that the trial court agreed were unconscionable—

18

the fee-shifting provision and the PAGA waiver—as well as what he claims constituted an unconscionable waiver of the right to seek public injunctive relief.

We first address the alleged public injunctive relief waiver. The trial court rejected Tielemans' argument by ruling that the complaint did not seek public injunctive relief at all. Instead, the trial court held, "[t]here is no allegation that Defendants' conduct had any impact on anyone other than Plaintiff and the putative class members. Any injunction would affect only employees of Defendants, who are individuals similarly situated to Plaintiff, and not any members of the general public." We review Tielemans' argument on this issue de novo. (*OTO*, *supra*, 8 Cal.5th at p. 125.)

As noted above, the arbitration provisions provide that: "The Arbitrator shall not have any authority to award relief that would require amendment of the [CBA] or other agreement(s) between the Union and a Contractor or the Contractors, or which conflicts with any provision of any collective bargaining agreement or such other agreement(s). Any arbitration outcome shall have no precedential value with respect to the interpretation of the [CBA] or other agreement(s) between the Union and a Contractor or the Contractors." Tielemans contends this could be interpreted to preclude claims for public injunctive relief.

However, it is by no means clear that this provision constitutes a waiver of public injunctive relief and Tielemans has not explained in any way how it does. Instead, he states only that this language "may be interpreted to cover claims for public injunctive relief." Accordingly, we consider the point forfeited. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 [appellate review is limited to issues which have been adequately raised and briefed].) In addition, as the trial court held, it is not clear that the complaint seeks public injunctive relief at all, as opposed to injunctive relief that would benefit only Tielemans and the putative class members. Although Tielemans claims that he is seeking such public injunctive relief, he has not pointed to any part of the complaint to support that assertion.

We next address Tielemans' argument that the agreements are "permeated with unconscionability" so the offending provisions should not have been severed. First, we note that we do not assess *whether* the fee-shifting provision or the PAGA waiver are in fact substantively unconscionable. Although Schultz presents such arguments in its appellate brief, it did not file a cross-appeal and therefore may not claim error in connection with Tielemans' appeal. (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665; see also Code Civ. Proc., § 902 [any party aggrieved may appeal]; *Gober v. Ralphs Grocery Co.* (2006) 137 Cal.App.4th 204, 211 ["A party is not aggrieved by a judgment or order rendered in its favor."].) Accordingly, for purposes of our analysis here, we assume these two provisions are unconscionable.

Our task, then, is only to determine whether the trial court abused its discretion in electing to sever the provisions it found unconscionable. (*Armendariz*, *supra*, 24 Cal.4th at p. 122 [applying abuse of discretion standard]; Civ. Code, § 1670.5, subd. (a) ["If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."].)

A trial court has the discretion to refuse to enforce an entire agreement if the agreement is " 'permeated' " by unconscionability. (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 826, citing *Armendariz*, *supra*, 24 Cal.4th at p. 122.) "An arbitration agreement can be considered permeated by unconscionability if it 'contains more than one unlawful provision . . . . Such multiple defects indicate a systematic effort to impose arbitration . . . not simply as an alternative to litigation, but as an inferior forum that works to the [stronger party's] advantage.' " (*Lhotka*, *supra*, at p. 826, quoting *Armendariz*, *supra*, at p. 124.) " 'The overarching inquiry is whether " 'the interests of justice . . . would be furthered' " by severance.' " (*Lhotka*, *supra*, at

p. 826, quoting *Armendariz*, *supra*, at p. 124.) The "strong preference is to sever *unless* the agreement is 'permeated' by unconscionability." (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 802, quoting *Dotson*, *supra*, 181 Cal.App.4th at pp. 985-986; *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1411 ["refusing to enforce the entire agreement is an option 'only when an agreement is "permeated" by unconscionability' "].)

Tielemans argues that "this Court should adopt the standard set forth in *Amendariz* and find that the agreement is unconscionable . . . because these unconscionable provisions should not have been included in the agreement in the first place." The trial court determined that the fee-shifting language was "collateral to the main purpose of the contract," relying on *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 92, for the proposition that the "main purpose of the arbitration agreement was not to regulate costs, but to provide a mechanism to resolve disputes such that the costs provision is collateral to that purpose." In addition, the trial court noted that the CBAs at issue here contain general savings clauses which provide that, "in the event any provision of the CBAs is determined to be illegal or void, as being in contravention of any law, the remainder of the CBAs shall remain in full force and effect." For those reasons, the trial court elected to exercise its discretion to sever the offending provisions and leave the remainder intact.

Tielemans does not explain how that constituted an abuse of discretion, other than to cite case law he claims compelled a contrary conclusion by the trial court. But he does not analogize the facts of those cases and we do not find them persuasive on this point.[12]

In light of the standards set forth above, we determine it was within the court's discretion to conclude the agreements were not permeated by unconscionability and that

[12] See *Nagrampa v. Mailcoups, Inc.* (9th Cir. 2006) 469 F.3d 1257, 1293; *Roe v. SFBSC Management, LLC* (N.D. Cal. 2022) 2022 U.S. Dist. Lexis 215222, *12; *Gentry v. Empire Medical Training* (N.D. Cal. 2013) 2013 2013 U.S. Dist. Lexis 124091, *6; *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1148; *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 627-639.

the interests of justice would be furthered by severing the offending provisions. (*Armendariz*, *supra*, 24 Cal.4th at p. 124 ["If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate."].)

### 5. *PAGA claims*

The parties devote significant portions of their briefs to arguments regarding PAGA issues, including whether a party may waive its right to bring PAGA claims in court and whether individual and non-individual (representative) PAGA claims may be segregated between arbitration and a judicial forum, citing recent United States Supreme Court precedent in *Viking River Cruises*, *Inc*. *v*. *Moriana* (2022) __ U.S. __ [2022 U.S. LEXIS 2940] [142 S.Ct. 1906].  However, those issues are not before us in this appeal because Schultz did not seek to compel arbitration of Tielemans' PAGA cause of action in the first place and, as noted above, did not appeal the judgment.

## III.    DISPOSITION

The judgment is affirmed.  Schultz is awarded its costs on appeal.

_____

Wilson, J.


WE CONCUR:


_____

Bamattre-Manoukian, Acting P.J.


_____

Danner, J.


Tielemans v. Aegion Energy Services, Inc., et al.
H049635